# F. L. Whitaker *v.* Alexander Lumber Co., Appellant.

*Contract—Quality of goods sold—Question for jury.*

Where the issue was whether goods delivered were of the quality ordered, the question is necessarily one for the jury, the testimony being conflicting.

*Contract—Substantial performance—Charge of the court.*

The question turning on the performance of a contract the jury were properly instructed by the trial judge as follows: " If it was substantially performed, if it was performed so that the proportionate extent of failure was comparatively small, and did not constitute the bulk of the entire quantity, then the plaintiff would be entitled to recover for whatever he did deliver that was in accordance with the contract, and the defendant would be entitled to have credit for whatever portion was deficient."

Argued Dec. 18, 1896. Appeal, No. 45, Nov. T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1894, No. 788, on verdict for plaintiff. Before RICE, P. J., WIL-

LARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ,
Affirmed.

Assumpsit for lumber sold defendant.  Before WILLSON, J.

The facts sufficiently appear in the opinion of the Superior
Court.

The court left the question of performance or substantial
performance to the jury.

Verdict for plaintiff, $594.41.  Defendant appealed.

*Errors assigned* were, (1) in charging as follows: "If it was
substantially performed, if it was performed so that the propor-
tionate extent of failure was comparatively small, and did not
constitute the bulk of the entire quantity, then the plaintiff
would be entitled to recover for whatever he did deliver that
was in accordance with the contract, and the defendant would
be entitled to have credit for whatever portion was deficient."
(2) In charging as follows: "At the same time, you will
remember that he (Arnold) stated that they (the Casket Com-
pany) were ready to give credit to the defendant for a certain
quantity.  As I understand the testimony, he said that they
were ready to give credit for 45,000 and some odd feet of the
60,000 or thereabouts, covered by the contract."

*Francis Rawle*, for appellant.—"In a purchase for a particu-
lar use made known to the seller, if the buyer relies on the ven-
dor's judgment to select and not his own, there is an implied
warranty that the article is reasonably fit and suitable for that
purpose:" Benjamin on Sales, 6th ed. p. 646.

On the purchase of "good sound lumber" the defendant
may refuse to receive any of a lower grade: Holt v. Pie, 120
Pa. 425.

Where the plaintiff ordered iron from the defendant for a
specified purpose known to defendant, it was held that it must
be of the kind ordered: P. & R. C. & I. Co. v. Hoffman, 4
Atl. Rep. 848.

"If a man sells an article he thereby warrants that it is mer-
chantable, that it is fit for some purpose; if he sells it for a
particular purpose he thereby warrants it fit for that purpose:"
Jones v. Bright, 5 Bing. 533.  This doctrine is not limited to
a manufacturer but applies to sellers: Jones v. Just, L. R.

3 Q. B. 197; French v. Vining, 102 Mass. 135; Downing v. Dearborne, 77 Me. 457; Gerst v. Jones, 32 Gratt. 518; Dushane v. Benedict, 120 U. S. 630. A sale of "No. 3 siding:" Whitehall Co. v. Wise, 119 Pa. 484. "Good sound hemlock:" Holt v. Pie, 120 Pa. 440. "Good salable corn:" Halloway v. Jacoby, 120 Pa. 583. "Thoroughly tanned leather:" Grœtzinger v. Kann, 165 Pa. 578. The present case is clearly distinguishable from Jarecki Co. v. Kerr, 165 Pa. 529.

*Wm. H. Staake,* with him *E. P. McCormick,* for appellee.

OPINION BY ORLADY, J., January 18, 1897:

Defendant, as a dealer in lumber, ordered from plaintiff four car loads of chestnut lumber, described in the letters directing the shipments as "sound wormy coffin culls," "sound wormy chestnut culls," "sound dry wormy chestnut culls" to be delivered at Allegheny, Pennsylvania, for the National Casket Company, to be used in making burial caskets and coffins.

Pursuant to the orders, about sixty thousand feet of lumber were delivered, and defense to the whole claim was made, for the reason as alleged by appellant, that all the lumber shipped was below the grade ordered, viz: mill culls, and of no value for the purpose for which it was intended to be used.

The plaintiff, and five witnesses in his behalf, testified to the quality of the lumber and their understanding of the trade designation "sound wormy chestnut culls;" that in the selection of the four car loads, every board was of that grade; that every board of the quality known as "mill culls" had been rejected by a careful inspection at the time of loading the cars; and that chestnut lumber in the trade was graded in four classes: ones and twos were one grade; common, sound, wormy and cull.

The defendant called eight witnesses to prove that there were five recognized grades of chestnut lumber in the trade; ones and twos the first grade, common, sound wormy, culls, and mill culls; that after an examination of the lumber, it should be rated as "mill culls" and was not of the standard mentioned in the orders.

The lumber was purchased by the defendant to be sold to the National Casket Company, and was delivered to them.

Testimony was adduced on each side to explain the extent

of defects permissible in a sound board to entitle it to rank as a cull, or reject it as a mill cull; and the grade of excellence to give it the merit of a sound wormy cull, to pass inspection for the casket and coffin trade.

. A director of the casket company, called by the defendant, testified that "he had seen the side of every board in the four car loads, and found 45,599 feet that could be used, better or worse."

The court said to the jury, inter alia: "If it was substantially performed, if it was performed so that the proportionate extent of failure was comparatively small, and did not constitute the bulk of the entire quantity, then the plaintiff would be entitled to recover for whatever he did deliver that was in accordance with the contract, and the defendant would be entitled to have credit for whatever portion was deficient." "These two questions arise: First, what was the obligation of the plaintiff under the contract, with reference to the particular and precise character of the lumber which he was bound to deliver? And second, did he or did he not substantially comply with that contract? It is just as you may settle the questions of fact upon those two points that your verdict ought to be formed. At the same time you will remember that he (Arnold) stated that they (the casket company) were ready to give credit to the defendant for a certain quantity. As I understand the testimony, he said that they were ready to give credit for 45,000 and some odd feet of the 60,000 or thereabouts covered by the contract." 2d. Assignment.

After the testimony of Mr. Arnold for the defendant, it was but a short step for the jury, to adopt the inspection as made by plaintiff's witnesses and determine by their verdict that the whole shipment was of sound wormy chestnut culls. It was purely a question of fact, and under this finding, the defendant suffered no injury from that part of the charge "if it was performed so that the proportionate extent of failure was comparatively small, and did not constitute the bulk of the entire quantity, then the plaintiff would be entitled to recover for whatever he did deliver that was in accordance with the contract."

Even if error, it was harmless, as the defendant refused to receive any of the lumber. The assignments of error are not sustained and the judgment is affirmed.